# Lessig *v.* Langton.

[MARCH 6, 1850.]

On a motion for a special injunction, where the defendant's answer is filed before the day of hearing, it is to be considered as an application after answer to the bill.

Where the application is for an injunction, upon affidavit, before answer, upon the ground of apprehended irremediable injury, the court will hear counter-affidavits until satisfied with the information offered; and the course is the same where the application is to issue an injunction, before answer.

But if the defendant has filed his answer, no affidavits can be read to contradict it.

The exceptions to this rule are cases of waste, and of partnership, when it is made clearly to appear that one partner, by acts of extreme misconduct is bringing the subject of the partnership within the principle of irreparable mischief, and so making the case analogous to waste.

They are permissible only to show fraud, mismanagement or improper conduct in the acting partner, or to show actual or threatened waste, but never to show title in the plaintiff, or the fact of partnership.

If a partner pledge his whole time for the joint benefit, and subsequently acquire property by his individual exertions in other business, the remedy of his co-partner is not by bill for an account, but by action for breach of covenant.

Equity will in no shape lend itself to assist a gambling transaction, or in any way to vindicate a contract of which gambling is the object.

IN EQUITY. Motion for an injunction.

The bill set forth that the complainant and defendant, in January, 1849, entered into partnership, in the digging of gold, and carrying on other business, in California. That under this agreement they sailed from Philadelphia, and in due time arrived at St. Francisco. That they carried on business there for several months, and were so successful, that they made and became possessed of gold, to the value of $20,000 and upwards. That the partnership was dissolved by agreement, whereby each of them became entitled to a moiety of the profits. That at the time of the

[ Lessig *v.* Langton.]

dissolution the defendant had in his possession nearly the whole of the partnership property, consisting of gold dust, &c., and while complainant was sick in one of the hospitals of California, the defendant left the territory and carried off with him the partnership property; and after his arrival in Philadelphia, deposited about $18,000 in gold, in the mint of the United States, for the purpose of being coined, and has disposed of the remainder of the partnership property. That the firm is not indebted, except in $500 for borrowed money. That defendant has been repeatedly called on by complainant's father and agent, to whom it was agreed by 'both of the partners that all remittances to this country, on their behalf, should be made, to give an account of complainant's property in his hands and to pay over the same, or deposit the same in some safe place, or to invest the same for complainant; but defendant denied having any gold with him except a few hundred dollars, and has made other untrue statements in relation to the business, and has refused to give any account of the assets of the firm in his hands, but intends to defraud complainant and to appropriate the whole of the assets to his own use; and in order to avoid a recovery, is now proposing, after turning the gold into coin, to leave the jurisdiction of the court, and to carry off the said property. The complainant therefore prayed for an account, and the appointment of a receiver, and that the defendant might be restrained by injunction from receiving or transferring any of the partnership effects, particularly the gold deposited in the mint of the United States.

At the time of filing the bill the complainant's counsel moved for a special injunction to restrain the defendant from assigning or transferring the gold deposited in the mint of the United States, or any other gold, the property of the partnership, and the certificate of deposit thereof.

On the following day, the defendant filed his answer, denying that there ever was any partnership between the

[Lessig *v.* Langton.]

complainant and defendant, and all the other facts set forth in the bill.

Depositions were taken on behalf of both the parties, the result of which sufficiently appears in the opinion of the court.

The motion for a special injunction was argued by *Cumming*, for complainant.

BELL, J.—I am satisfied the motion for an injunction must be dismissed. An answer having been filed, before injunction granted, it must now be considered as an application after answer to the bill.

It is not like *Morphett* v. *Jones*, 19 Ves. 351, where, upon motion for an injunction, the defendant asked that it might stand over, that he might file affidavits in opposition to it, but instead thereof filed an answer. Lord ELDON said, in such a case, he would look at the answer as an affidavit, and allow the original one to be read. Nor is it like *Glassington* v. *Thwaites*, 1 Simons & Stuart, 134, where the motion stood over, on motion day, for want of time, and in the mean time the defendant put in his answer, in which Lord ELDON declared the practice in such cases to be, to regard the answer as a counter affidavit, and he allowed affidavits put in before the motion day to be read in answer.

This case is then to be governed by the rules of practice which obtain in motions for injunction after answer. Where the application is for an injunction upon affidavit, before answer, upon the ground of apprehended irremediable injury, the court will hear counter affidavits until satisfied with the information offered: and the course is the same where the application is to issue an injunction before answer. 2 Dan. Ch. Pr. 356. But if the defendant has filed his answer, then it is a general rule that no affidavit can be read to contradict it; for where the answer is full, and denies all the circumstances upon which the

[ Lessig *v.* Langton. ]

equity is founded, it has become the universal practice, with reference to an injunction, to give credit to the answer. The plaintiff is strictly tied down to reading the answer in support of his case, whether the motion be for an injunction, or upon the merits against dissolving a common injunction.

A contrary determination made by BULLER, Judge, in *Isaacs* v. *Humpage*, 1 Ves. Jr. 427, 3 Bro. Ch. 463, has been repeatedly overruled; Eden on Inj. 108; 2 Dan. Ch. Pr. 289; *Norway* v. *Rowe*, 19 Ves. 150. And so firmly is the practice settled, that in *Clapham* v. *White*, 8 Ves. 36, the chancellor said that though five hundred affidavits were filed, not only by the defendant, but by many witnesses, not one could be read to overthrow the answer.

It is true, the rule is open to exception in case of waste, from the strong desire the court of chancery has always felt to prevent irremediable injury to lands. *Countess of Strathmore* v. *Bowes*, 2 Bro. Ch. 88; S. C. 1 Cox 263; S. C. 2 Dick 673; *Robinson* v. *Byron*, 1 Bro. Ch. 588.

And, after considerable hesitation, the exception was extended to cases of partnership, where in principle these are analogous to waste. But this is admitted with great caution, and the reading of affidavits is only admitted when it is made clearly to appear, that one partner, by acts of extreme misconduct, is bringing the subject of the partnership within the principle of irreparable mischief, and so making the case analogous to waste. They are permissible, in refutation of the defendant's answer, only to show fraud, mismanagement or improper conduct in the acting partner, or to show actual or threatened waste; but never to show title in the plaintiff, or the fact of partnership denied. *Strathmore* v. *Bowes*, 2 Bro. Ch. 74, in note; *Charlton* v. *Poulter*, cited in *Norway* v. *Rowe*, 19 Ves. 148; *Peacock* v. *Peacock*, 16 Ves. 49; *Lawson* v. *Morgan*, 1 Price 303; note to *Hanson* v. *Gardiner*, 7 Ves. 305–6, Am. Edition. In the last case, the Chief Baron said, in the case of an application against an acting partner, to bring it within the

[*Lessig v. Langton.*]

principle of waste, or irreparable injury, it should be shown the partner is insolvent, or at least in embarrassed circumstances, in which case alone can there be any pretence for reading affidavits in contradiction of an answer; it can only thus be brought within the analogy of waste: and GRAHAM, Baron, said, the interposition of the courts is an arbitrary measure, and the courts have always voluntarily interposed, conscious that by such attempts to prevent mischief, they must often cause it.

Now, in the present case, the allegation of misconduct in the defendant, consists in improperly carrying off the partnership funds from California, his refusal to account, or pay over, or secure the moiety of his copartner, (although this, undoubtedly, would be no ground, of itself, for an injunction) falsehood and concealment of the truth, originating in an attempt fraudulently to appropriate the whole fund to himself, and his intention to depart the commonwealth to avoid accounting.

But all this is explained and fully denied, and the affidavits exhibited by the plaintiff do not contradict the answer in this particular: indeed, so far as they go, they rather sustain it. They profess, however, only to prove the alleged partnership, and for this purpose they are incompetent, and should not have been read.

Then, upon the other objection. Even where admissible to contradict the answer, they can only be read where they are filed before the answer is put in. They cannot be made use of, if filed after answer; *Lawson* v. *Morgan*, 1 Price 303, and books of practice. But the affidavits upon which the plaintiff principally relies, were filed after the answer put in, and consequently, for purposes of contradiction, are valueless. These being out of the way, there is no proof of partnership, upon which he can proceed.

Suppose, however, I am at liberty to look into the affidavits: the weight of the evidence is, that if a partnership ever existed, it was dissolved by mutual consent, before the

[ *Lessig v.* Langton. ]

parties reached California. Nay, the depositions taken on behalf of the defendant, exhibit a state of facts utterly irreconcilable with the idea of partnership.

But the objection is interposed, that the answer wholly denies partnership, and does not aver dissolution, by which, it is supposed, I am precluded from decreeing on the ground of dissolution, before reaching the point where the business of the partnership was to commence. If this be so, and we take the partnership as established by the witnesses for the plaintiff, the question is presented—where is the proof of misconduct or mismanagement on the part of the defendant? If there was a partnership, there is nothing improper in the defendant's being in possession of the partnership property: he may even dispose of it for joint benefit. That he refuses to account is no ground for an injunction. But even this is not proved; nor does the evidence disclose misbehaviour in any other particular, much less, such as must call for a preventive extraordinary remedy.

But, again, should we concede this difficulty out of the way, and full proof of partnership? The bill alleges the partnership to have been for the purpose of *digging gold*, and the plaintiff's evidence tends to establish this. It is certain, if it existed at all, it was either for that purpose, or to make gain by gambling. Either way is fatal for the prayer for an injunction. If it was for the former purpose, then it is plain, under the proofs, the fund now held by the defendant was acquired, not in pursuit of the partnership business, but by the private and individual occupation of the defendant. It is, consequently, not partnership property. It will not do to answer, that the defendant having pledged his whole time for the joint benefit, he must account for all he acquired while otherwise occupied. In the first place, there is no evidence of such agreement, and secondly, if there was, the remedy is not by bill for an account as a partner, but action for breach of covenant. If the partnership was for the purpose of gambling, it is clear, equity

[Lessig *v.* Langton.]

will in no shape lend itself to assist a gambling transaction, or in any way to vindicate a contract of which gambling is the object. 1 Story's Eq. § 303; *Harrington* v. *Bigelow*, 11 Paige 349.

In no aspect of this case is the plaintiff entitled to an injunction, and the motion for one must be dismissed. As the proof now stands, he cannot have an account, but this we are not now called on to decide.

Interlocutory motion for injunction denied.*

---

* Where a number of individuals formed an association, for a specified term, to engage in mining for gold in California, and one advanced money, and the others agreed to proceed to the mines, and engage in the digging for gold; but when they arrived, the capital advanced being exhausted, and all abandoned the enterprise as fruitless, and two of them engaged in another and different employment of their labour; it was *held* that the associate who advanced the money had no specific lien on the profits produced by such labour, as could be enforced in a court of equity: his remedy, if any he had, was by an action for damages against those who abandoned the association. *Waring* v. *Cram*, 1 Pars. Eq. Cas. 516.